```
 1                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NORTH CAROLINA
 2                          WESTERN DIVISION

 3

 4      UNITED STATES OF AMERICA,      )
                                       )
 5                                     )
                          PLAINTIFF,   )
 6                                     )
                  VS                   ) CASE NO. 5:12-CR-289-1D
 7                                     )
                                       )
 8      MICHAEL ANTHONY WALCOTT,       )
                                       )
 9                       DEFENDANT.    )

10

11

12                          SENTENCING

13                      FEBRUARY 10, 2014

14           CHIEF DISTRICT JUDGE JAMES C. DEVER III

15

16

        APPEARANCES:
17
            MS. YOLANDA DEE MCCRAY-JONES
18          ASSISTANT UNITED STATES ATTORNEY
            310 NEW BERN AVENUE
19          RALEIGH, NC   27601
            (FOR THE GOVERNMENT)
20
            MR. ROBERT E. WATERS
21          ASSISTANT FEDERAL PUBLIC DEFENDER
            150 FAYETTEVILLE STREET
22          SUITE 450
            RALEIGH, NC   27601
23          (FOR THE DEFENDANT)

24

25      SHARON K. KROEGER, COURT REPORTER
        MACHINE SHORTHAND REPORTER, COMPUTER AIDED TRANSCRIPTION
```

1          THE COURT:  WE WILL NEXT TAKE UP THE

2    SENTENCING OF MICHAEL WALCOTT.

3          MS. MCCRAY-JONES, IS THE UNITED STATES READY?

4          MS. MCCRAY-JONES:  YES, YOUR HONOR.

5          THE COURT:  MR. WATERS, ARE YOU AND MR.

6    WALCOTT READY?

7          MR. WATERS:  YES, YOUR HONOR.

8          THE COURT:  AT THIS TIME, I WOULD ASK THAT MR.

9    WALCOTT BE SWORN.

10          (WHEREUPON, THE DEFENDANT WAS SWORN.)

11          THE COURT:  MR. WALCOTT, DO YOU UNDERSTAND

12   THAT HAVING BEEN SWORN, THAT YOUR ANSWERS TO MY QUESTIONS

13   ARE SUBJECT TO THE PENALY OF PERJURY, SIR?

14          THE DEFENDANT:  YES, YOUR HONOR.

15          THE COURT:  HAVE YOU TAKEN ANY KIND OF

16   MEDICINE, OR ANY OTHER SUBSTANCE IN THE LAST 48 HOURS

17   THAT WOULD AFFECT YOUR ABILITY TO HEAR AND UNDERSTAND

18   THESE PROCEEDINGS?

19          THE DEFENDANT:  NO, YOUR HONOR.

20          THE COURT:  DO YOU KNOW WHY YOU ARE HERE

21   TODAY?

22          THE DEFENDANT:  YES.

23          THE COURT:  MR. WATERS, DO YOU HAVE ANY REASON

24   TO DOUBT MR. WALCOTT'S COMPETENCE TO GO FORWARD TODAY?

25          MR. WATERS:  NO, YOUR HONOR.

1    THE COURT:  DOES THE GOVERNMENT HAVE ANY

2    REASON TO DOUBT MR. WALCOTT'S COMPETENCE TO GO FORWARD

3    TODAY?

4    MS. MCCRAY-JONES:  NO, YOUR HONOR.

5    THE COURT:  BASED ON MR. WALCOTT'S ANSWERS TO

6    MY QUESTIONS, MY OBSERVATIONS OF MR. WALCOTT, AND THE

7    ANSWERS FROM COUNSEL, I FIND THAT MR. WALCOTT IS

8    COMPETENT TO GO FORWARD HERE TODAY.

9    MR. WALCOTT, AS YOU KNOW, YOU ARE HERE TODAY

10   HAVING ENTERED A PLEA OF GUILTY TO THE CHARGE OF

11   POSSESSION OF CHILD PORNOGRAPHY.  YOU ENTERED A PLEA OF

12   GUILTY TO THAT CHARGE IN THIS COURT.

13   IN LIGHT OF SOME CASE FROM THE SUPREME COURT

14   OF THE UNITED STATES, INCLUDING THE BOOKER, RITA, GALL,

15   KIMBROUGH, SPEARS AND NELSON CASES, THE GUIDELINES ARE NO

16   LONGER MANDATORY.  THEY ARE ADVISORY.

17   NEVERTHELESS, IN ACCORDANCE WITH THOSE CASES

18   AND SOME CASES FROM THE FOURTH CIRCUIT INTERPRETING THEM,

19   INCLUDING THE CARTER, PAWLEY AND EVANS CASES, A

20   SENTENCING COURT STILL MUST TAKE INTO ACCOUNT THE NOW

21   ADVISORY GUIDELINES.

22   THE COURT DOES THIS BY INITIALLY MAKING

23   FINDINGS OF FACT AND CALCULATING AN ADVISORY GUIDELINE

24   RANGE.  THE COURT WILL THEN CONSIDER ANY MOTION THAT

25   MIGHT BE MADE THAT MIGHT MOVE THE RANGE EITHER UP OR

1    DOWN.

2              I WILL THEN CONSIDER ALL ARGUMENTS YOUR LAWYER

3    MAKES ON YOUR BEHALF, ANY STATEMENT YOU WOULD LIKE TO

4    MAKE, AND ALL ARGUMENTS THAT THE ASSISTANT UNITED STATES

5    ATTORNEY MAKES.

6              I WILL THEN DETERMINE YOUR SENTENCE AND

7    ANNOUNCE IT HERE IN COURT TODAY.  THAT WILL BE THE

8    PROCESS WE WILL FOLLOW.

9              MR. WATERS, DID YOU RECEIVE A COPY OF THE

10   PRESENTENCE REPORT, SIR?

11             MR. WATERS:  YES, YOUR HONOR.

12             THE COURT:  MR. WALCOTT, DID YOU RECEIVE A

13   COPY OF THAT REPORT, SIR?

14             THE DEFENDANT:  YES, YOUR HONOR.

15             THE COURT:  DID YOU SPEAK WITH MR. WATERS,

16   YOUR LAWYER, ABOUT THE REPORT?

17             THE DEFENDANT:  YES, YOUR HONOR.

18             THE COURT:  AT THIS TIME, THE COURT DIRECTS

19   THAT THE PRESENTENCE REPORT BE PLACED IN THE RECORD UNDER

20   SEAL.  IN CORRESPONDENCE WITH THE FEDERAL RULES OF

21   CRIMINAL PROCEDURE, THE COURT ACCEPTS AS ACCURATE THE

22   PRESENTENCE REPORT EXCEPT AS TO MATTERS IN DISPUTE AS SET

23   FORTH IN THE ADDENDUM.

24             I HAVE REVIEWED THE ENTIRE REPORT, INCLUDING

25   THE ADDENDUM.  THE ADDENDUM INDICATES THERE ARE NO

1    OBJECTIONS FROM EITHER THE GOVERNMENT OR THE DEFENSE.

2              MR. WATERS, IS IT STILL THE CASE, NO

3    OBJECTIONS FROM THE DEFENSE?

4              MR. WATERS:  THAT'S CORRECT, YOUR HONOR.

5              THE COURT:  IS THAT CORRECT, MR. WALCOTT?

6              THE DEFENDANT:  YES, YOUR HONOR.

7              THE COURT:  NO OBJECTION FROM THE GOVERNMENT?

8              MS. MCCRAY-JONES:  NO OBJECTIONS, YOUR HONOR.

9              THE COURT:  ALL RIGHT.  FOR PURPOSES OF BOOKER

10   AND ITS PROGENY, THE COURT CALCULATES THE ADVISORY

11   GUIDELINE RANGE AS FOLLOWS.  THE TOTAL OFFENSE LEVEL IS

12   30.  THE CRIMINAL HISTORY CATEGORY IS II.  THE ADVISORY

13   GUIDELINE RANGE IS 108 TO 120 MONTHS.

14              DOES THE GOVERNMENT OBJECT TO THAT ADVISORY

15   GUIDELINE RANGE?

16              MS. MCCRAY-JONES:  NO, YOUR HONOR.

17              THE COURT:  DOES THE DEFENSE OBJECT TO THAT

18   ADVISORY GUIDELINE RANGE?

19              MR. WATERS:  NO, YOUR HONOR.

20              THE COURT:  AND, OF COURSE, THE STAT MAX

21   PROVIDES THE CAP AT THE TOP END OF THAT ADVISORY

22   GUIDELINE RANGE.

23              I HAVE RECEIVED AND REVIEWED THE LETTERS THAT

24   HAVE BEEN SUBMITTED, THAT MR. WATERS SUBMITTED.  I THANK

25   THE PEOPLE WHO WROTE IN ON BEHALF OF MR. WALCOTT.

1           AT THIS TIME, I WILL HEAR FIRST FROM MR.

2    WATERS.  I WILL THEN HEAR FROM MR. WALCOTT.  I WILL THEN

3    HEAR FROM MS. MCCRAY-JONES.

4           MR. WATERS.

5           MR. WATERS:  THANK YOU, YOUR HONOR.  OF

6    COURSE, AS IT'S SET FORTH IN THE PSR, MR. WALCOTT PLED

7    PURSUANT TO A PLEA AGREEMENT WHICH CONTAINED A SENTENCING

8    RECOMMENDATION THAT BOTH I AND COUNSEL FOR THE GOVERNMENT

9    SIGNED OFF ON.

10          THAT PLEA AGREEMENT WAS ENTERED AFTER A LOT OF

11   NEGOTIATION WITH MS. MCCRAY-JONES AND HER PREDECESSOR AND

12   IT WAS VOLUNTARILY ENTERED INTO AND I STILL STAND BY IT;

13   HOWEVER, AS THE COURT ISN'T BOUND BY IT AND THE COURT

14   DOES HAVE AN OBLIGATION TO IMPOSE A SENTENCE NOT GREATER

15   THAN NECESSARY TO ACHIEVE THE PURPOSES OF THE SENTENCING

16   ACT, WE WOULD ASK THE COURT TAKE INTO CONSIDERATION SOME

17   CHARACTERISTICS AND FACTORS.

18          FIRST, OF COURSE, IS THE FACT THAT MR. WALCOTT

19   IS STILL A VERY YOUNG MAN.  HE IS 31 YEARS OLD.  HE IS IN

20   THE SECOND LOWEST CRIMINAL HISTORY CATEGORY, HAVING ONLY

21   A SINGLE CRIMINAL HISTORY POINT ASSESSED AGAINST HIM FOR

22   A MISDEMEANOR CONVICTION.

23          HE HAS, OF COURSE, TWO OTHER POINTS BECAUSE OF

24   THE RECENCY OF THAT CONVICTION, BUT ACTUAL -- FOR ACTUAL

25   ACTS THAT HE HAS COMMITTED, HE HAS A SINGLE CRIMINAL

1    HISTORY POINT.  HE HAS NEVER BEEN INVOLVED IN ANY FELONY

2    CONVICTIONS.  HE HAS NEVER BEEN INVOLVED IN ANY FEDERAL

3    VIOLATIONS AT ALL.

4         HE SERVED HIS COUNTRY IN THE UNITED STATES

5    ARMY, ENLISTING TWICE, AND WAS DISCHARGED THE SECOND TIME

6    WITH A MEDICAL DISCHARGE.

7         HE HAS A VERY STRONG FAMILY SUPPORT NETWORK AS

8    YOUR HONOR WILL HAVE SEEN FROM THE LETTERS THAT WERE

9    SUBMITTED.  SOME MEMBERS OF HIS FAMILY ARE HERE TODAY --

10   HIS MOTHER, WHO CAME HERE FROM GERMANY, HIS FATHER WHO

11   ALSO SERVED IN THE UNITED STATES ARMY, HIS WIFE AND

12   MEMBERS OF HER FAMILY, AND OTHER MEMBERS OF HIS FAMILY.

13   IF YOU COULD ALL STAND UP SO THE COURT COULD RECOGNIZE

14   YOU.  HE HAS A SUPPORT NETWORK.

15        HE HAS THE KNOWLEDGE THAT HE HAS MADE A VERY

16   VERY SERIOUS MISTAKE AND HE KNOWS IT.  HE HAS NEVER BEEN

17   IN THIS KIND OF TROUBLE BEFORE, YOUR HONOR.

18        AS TO THE KIND AND NATURE OF THE SENTENCE,

19   OPTIONS THAT ARE AVAILABLE TO YOUR HONOR, INCLUDING THE

20   GUIDELINE RANGE, I WOULD SIMPLY NOTE THAT MANY OF THE

21   ENHANCEMENTS THAT WE DID STIPULATE TO IN THE PLEA

22   AGREEMENT ARE ENHANCEMENTS THAT THE SENTENCING COMMISSION

23   ITSELF ACKNOWLEDGES ARE NO LONGER -- NO LONGER SERVE THE

24   PURPOSE THAT THEY WERE INTENDED FOR, TO DISTINGUISH

25   BETWEEN OFFENDERS AND THE CIRCUMSTANCES OF THEIR

1  OFFENSES.

2          NOW, MANY OF THESE ENHANCEMENTS APPEAR IN ALL

3  OR ALMOST ALL CASES.  THE TWO POINT ENHANCEMENT FOR USE

4  OF THE COMPUTER.  THESE ARE JUST THINGS THAT NO LONGER

5  SERVE TO GIVE THE COURT INFORMATION THAT IT COULD USE TO

6  DISTINGUISH MR. WALCOTT FROM ANYONE ELSE WHO WAS CHARGED

7  WITH THE SAME CHARGE.

8          SO WE ASK THE COURT LOOK AT MR. WALCOTT, LOOK

9  AT HIS HISTORY, LOOK AT THE CIRCUMSTANCES OF THE OFFENSE,

10  AND IMPOSE A SENTENCE THAT IS NOT GREATER THAN NECESSARY

11  IN THIS CASE.

12          THE COURT:  THANK YOU.  AT THIS TIME, I WILL

13  HEAR FROM MR. WALCOTT IF YOU WOULD LIKE TO MAKE A

14  STATEMENT, SIR.

15          THE DEFENDANT:  WELL, I AM NOT HERE TO MAKE

16  ANY EXCUSES.  I JUST, YOU KNOW, THERE IS A LOT THAT I WAS

17  TRYING TO DO.  I WAS TRYING TO GO TO SCHOOL, SOMETHING I

18  SHOULD HAVE DONE WHEN I GOT OUT OF THE MILITARY.

19          THE COURT:  SO YOU GOT A GENERAL DISCHARGE

20  BECAUSE OF YOUR INJURIES AND THEN YOU TRIED TO WORK SOME

21  AND THEN YOU WENT BACK IN?

22          THE DEFENDANT:  YES, YOUR HONOR.  I WENT BACK

23  IN THINKING THAT I WOULD BE ABLE TO MAKE IT, AND I GOT

24  RE-INJURED.

25          THE COURT:  WHERE DID THEY SEND YOU THE SECOND

1  TIME YOU WENT IN?  WHERE DID YOU GO?  WHERE WERE YOU

2  BASED?  FORT JACKSON?

3           THE DEFENDANT:  I WAS AT CAMP MCGREGOR, RIGHT

4  OUTSIDE OF FORT BLISS, TEXAS.

5           THE COURT:  WHERE DID YOU GO THE FIRST TIME?

6           THE DEFENDANT:  THE FIRST TIME -- WELL, I WENT

7  TO BASIC TRAINING AT FORT KNOX.  I WENT TO A.I.T. AT FORT

8  LEE, VIRGINIA, AND MY FIRST DUTY STATION AT FORT WORTH.

9           THE COURT:  WHAT WAS YOUR THE MOS THE FIRST

10  TIME THAT YOU WERE IN?

11           THE DEFENDANT:  SUPPLIES AND LOGISTICS.

12           THE COURT:  WERE YOU TRYING TO GET BACK IN

13  THAT WHEN YOU WENT IN THE SECOND TIME?

14           THE DEFENDANT:  YES, YOUR HONOR.  IT'S PRETTY

15  MUCH ALL I KNEW HOW TO DO.  AS A MATTER OF FACT, BEFORE I

16  GOT ARRESTED HERE, I WAS ATTEMPTING TO GO INTO REHAB AND

17  I APPLIED FOR MY G.I. BILL TRYING TO GET TO SCHOOL, AND I

18  WAS WAITING FOR ALL OF THAT TO BE ACCEPTED.

19           THE COURT:  YOU WERE LIVING ON POST AT YOUR

20  DAD'S HOUSE?

21           THE WITNESS:  YES, YOUR HONOR.

22           THE COURT:  HE WAS STILL ON ACTIVE DUTY AT THE

23  TIME, BUT HE HAS SINCE RETIRED?

24           THE DEFENDANT:  YES, YOUR HONOR.  MY FATHER

25  HAS BEEN IN THE MILITARY 30-PLUS YEARS.  I WAS TRYING TO

1    DO THE SAME THING, BUT DIDN'T QUITE MAKE IT CONSIDERING

2    MY INJURIES.

3            THE COURT:  HOW DID YOU GET HURT?

4            THE DEFENDANT:  I GOT RAN OVER.

5            THE COURT:  IN A TRAINING ACCIDENT?

6            THE DEFENDANT:  NO, IT WAS AT THE WAREHOUSE.

7    I GOT RAN OVER.

8            THE COURT:  WHAT POST?

9            THE DEFENDANT:  FORT HOOD.

10           THE COURT:  AND AT FORT HOOD?

11           THE DEFENDANT:  YES, YOUR HONOR.

12           THE COURT:  WHY DID YOU DO THIS?

13           THE DEFENDANT:  I AM SORRY?

14           THE COURT:  I SAID WHY DID YOU DO THIS?  YOU

15   KNOW BETTER THAN THIS.  WHY DID YOU DO THIS?

16           YOU KNOW THESE ARE REAL CHILDREN, RIGHT?  I

17   MEAN, YOU KNOW THAT.

18           THE DEFENDANT:  YES, YOUR HONOR.

19           THE COURT:  I MEAN, THEY ARE REAL LITTLE

20   CHILDREN IN THESE VIDEOS AND YOU SERVED IN THE ARMY AND

21   YOU SERVED HONORABLY AND YOU CAME FROM AN ARMY FAMILY AND

22   EVERYBODY IN YOUR FAMILY KNOWS BETTER.  AND HOW DID THIS

23   HAPPEN?

24           THE DEFENDANT:  USING THE PROGRAM THAT I

25   DIDN'T HAVE ANY KNOWLEDGE OF IS BASICALLY WHAT HAPPENED.

1          THE COURT:  BUT THEN YOU HAVE TO PUT IN SEARCH

2    TERMS, RIGHT?  AT SOME LEVEL, I MEAN, IF YOU ARE GOING

3    OUT AND YOU ARE SEARCHING FOR PORNOGRAPHY AND THEN YOU

4    GET -- WELL, I MEAN, THESE ARE REAL.

5          THIS IS YOUR CHANCE TO ALLOCUTE.  I AM JUST

6    TRYING TO UNDERSTAND.  I HAVE GOT TAKE INTO ACCOUNT THE

7    PERSON AND I HAVE READ THE REPORT AND I AM FAMILIAR WITH

8    A LOT OF THE POSTS YOU HAVE MENTIONED, AND I CERTAINLY

9    KNOW THAT MOS AND I KNOW ABOUT SERVING.

10          AND I ALSO KNOW THAT EVERY CHILD IN EVERY ONE

11    OF THESE IMAGES, THE DAY THEY WOKE UP BEFORE THEY WERE

12    MOLESTED OR RAPED AND SOMEBODY VIDEOTAPED IT AND PUT IT

13    OUT ON THE INTERNET WHERE IT WILL BE FOREVER, IT IS

14    SOMETHING THAT TO EACH OF THOSE CHILDREN HAS CHANGED

15    THEIR LIFE FOREVER.

16          AND IT'S PERPLEXING TO ME, IN ALL CANDOR TO

17    YOU, HOW ANYBODY COULD LOOK AT THAT AND NOT BE REPULSED.

18          AND, IN FACT, FOR SOMEONE WHO SERVED IN THE

19    ARMY, HOW SOMEBODY COULDN'T SAY SOMEBODY NEEDS TO HELP

20    THESE CHILDREN WHO ARE REAL.

21          AND AGAIN, I AM JUST TRYING TO UNDERSTAND.

22    THIS TOOK PLACE OVER THE COURSE OF OCTOBER AND NOVEMBER

23    2011, RIGHT?

24          THE DEFENDANT:  YES.  AS SOON AS I SAW IT WAS

25    ON MY COMPUTER, I DELETED IT RIGHT AWAY.  IT WAS OVER IN

1  THE COURSE OF A WEEK WHEN I SAW IT, AND WHEN I SAW IT, I

2  WAS TRYING TO GET RID OF IT, AND I DELETED THE PROGRAM

3  RIGHT AWAY.  IT WAS ALL IN THE COURSE OF A WEEK.

4       THE COURT:  WHAT ELSE DO YOU WANT TO TELL ME?

5       THE DEFENDANT:  WELL, I WAS JUST TRYING TO --

6  BASICALLY, BEFORE ALL THIS HAPPENED, I WAS JUST TRYING TO

7  GET MY LIFE IN ORDER.  AND I PROCRASTINATED FOR A LONG

8  PERIOD OF TIME AND IT WASN'T UNTIL IT WAS TOO LATE BEFORE

9  I REALIZED I NEEDED TO GET BACK ON TRACK.  BUT I DID MAKE

10  THE STEPS NECESSARY TO TRY TO GET BACK ON TRACK AND UNTIL

11  I GOT ARRESTED, AND I JUST WANT TO PUT THIS BEHIND ME.  I

12  WANT -- I WANT NOTHING TO DO WITH IT.  AND I JUST WANT TO

13  MOVE ON WITH MY LIFE.

14       THE COURT:  THANK YOU, MR. WALCOTT.

15  AT THIS TIME, I WILL HEAR FROM MS. MCCRAY-JONES.

16       MS. MCCRAY-JONES:  YES, YOUR HONOR.  PER THE

17  PLEA AGREEMENT, THE GOVERNMENT RECOMMENDS A TEN YEAR

18  SENTENCE AND TEN YEARS OF SUPERVISED RELEASE.  I WOULD

19  LIKE TO MAKE THE COURT AWARE OF CERTAIN STATEMENTS THAT

20  THE DEFENDANT MADE WHILE HE WAS IN CONFINEMENT THAT

21  APPEAR TO BE INCONSISTENT WITH THE MANNER IN WHICH HE HAS

22  BEEN PORTRAYED IN SOME OF THE CHARACTER REFERENCES AND

23  ALSO INCONSISTENT WITH SOME OF THE STATEMENTS THAT THE

24  DEFENDANT JUST MADE TO THE COURT TODAY WITH RESPECT TO

25  THAT HE WAS ATTEMPTING TO DELETE RIGHT AWAY AND USING A

1    PROGRAM THAT HE HAD NO KNOWLEDGE OF.

2              YOUR HONOR, SPECIFICALLY, WHILE THE DEFENDANT

3    WAS IN CONFINEMENT, IN TERMS OF SOME OF THE THINGS THAT

4    WERE SAID IN THE CHARACTER REFERENCES, THEY WERE REFERRED

5    TO AS INADVERTENT.  IT WASN'T DELIBERATELY OBTAINED.  IT

6    WAS A ONE TIME THING AND THERE WOULDN'T BE REPEATED ACTS.

7              MR. WALCOTT INDICATED THAT OUTSIDE OF THIS

8    INCIDENT, WHILE HE WAS IN UTAH WITH HIS SECOND WIFE, THAT

9    SHE DISCOVERED A PICTURE OF CHILD PORNOGRAPHY AND ADULT

10   PORNOGRAPHY ON HIS COMPUTER THEN, WHICH WAS WHEN HE WAS

11   IN UTAH BEFORE HE CAME TO FORT BRAGG.

12             MR. WALCOTT ALSO INDICATED THAT HE WAS VERY

13   SMART WITH COMPUTERS AND THAT HE ATTEMPTED TO PLAY DUMB

14   WITH INVESTIGATORS WHEN THEY INTERVIEWED HIM.  HE CLAIMED

15   THAT THE ONLY REASON HE GOT CAUGHT WITH CHILD PORNOGRAPHY

16   WAS BECAUSE HE FORGOT TO TURN HIS COMPUTER OFF, THAT HE

17   HAD MORE CHILD PORNOGRAPHY THAN WHAT WAS FOUND, AND HE

18   SPECIFICALLY TALKED ABOUT HIDING CERTAIN FILES IN SECRET

19   FILES WITH NAMES LIKE SWANKY.

20             HE ALSO INDICATED THAT AT ONE POINT HE HAD

21   OVER 1,000 IMAGES OF CHILD PORNOGRAPHY VIDEOS, BUT THOSE

22   ARE THINGS THAT THE INVESTIGATORS HAD NOT FOUND.

23             WITH RESPECT TO THE UNITED STATES' LAWS ON

24   CHILD PORNOGRAPHY, MR. WALCOTT INDICATED THAT HE

25   DISAGREED WITH THE UNITED STATES' LAWS ON CHILD

1    PORNOGRAPHY AND LAWS STATING THAT THE UNITED STATES

2    SHOULD BE ABLE TO DICTATE AT WHAT AGE SHOULD HAVE SEX

3    WITH.

4              AND THEN, YOUR HONOR, WITH RESPECT TO MR.

5    WALCOTT'S KNOWLEDGE, I BELIEVE ONE OF THE LETTERS

6    INDICATES THAT HE HAD NO KNOWLEDGE OF THE WARRANT FOR

7    ARREST THAT WAS OUT FOR HIM.

8              MR. WALCOTT ALSO INDICATED THAT HE WAS

9    INFORMED BY ONE OF HIS FAMILY MEMBERS THAT MARSHALS WERE

10   LOOKING FOR HIM AND THAT WAS PRIOR TO HIM LEAVING THE

11   STATE AND GOING TO TEXAS WHERE HE WAS ARRESTED.  AND HIS

12   WIFE DID NOT KNOW BUT HIS WARRANT STATUS OR ABOUT THE

13   CHILD PORNOGRAPHY.

14             SO, YOUR HONOR, I JUST WANTED TO POINT THOSE

15   OUT BECAUSE THOSE STATEMENTS BY MR. WALCOTT APPEAR TO BE

16   CONTRADICTORY TO THE MANNER IN WHICH HE WAS DEPICTED IN

17   HIS CHARACTER REFERENCES AND ALSO CONTRADICTORY TO THE

18   MANNER IN WHICH MR. WALCOTT APPEARS TO BE DEPICTING

19   HIMSELF TO THE COURT.

20             IN THIS SITUATION, HE HAD OVER 102 IMAGES OR

21   VIDEOS OF CHILD PORNOGRAPHY, MANY OF WHICH DEPICTED

22   CHILDREN UNDER THE AGE OF 12, SOME OF WHOM WERE TODDLERS

23   ENGAGED IN SEXUAL ACTS WITH ADULTS AND IN OBVIOUS PAIN,

24   AND FOR THAT REASON AND FOR SOME OF THE THINGS THAT ARE

25   OUTLINED IN THE PSR, WE BELIEVE THAT THE RECOMMENDED

1    SENTENCE OF 10 YEARS WHICH IS THE MAXIMUM AND THEN TEN

2    YEARS OF SUPERVISED RELEASE IS APPROPRIATE.

3         THE COURT:  THANK YOU.

4         MR. WATERS:  YOUR HONOR, IF I MAY BE HEARD

5    BRIEFLY JUST AS TO THE STATEMENTS THAT WERE PURPORTEDLY

6    MADE BY MR. WALCOTT.  THESE STATEMENTS, I BELIEVE, WERE

7    FROM A DEBRIEFING INTERVIEW FROM A CELLMATE OF MR.

8    WALCOTT'S.  THAT INTERVIEW -- NOTES FROM THAT INTERVIEW

9    WERE PROVIDED TO THE DEFENDANT AND TO THE PROBATION

10   OFFICER.

11        THE REASON THEY DON'T APPEAR IN THE PSR IS

12   THAT THE PROBATION OFFICER INQUIRED AS TO WHETHER THIS

13   WAS RELIABLE INFORMATION, AND THE GOVERNMENT DID NOT

14   STATE THAT IT WAS RELIABLE.

15        AGAIN, I AM NOT OPPOSING THE PLEA AGREEMENT OR

16   THE RECOMMENDED SENTENCE THEREIN, BUT SIMPLY WANTED TO

17   NOTE THAT THE STATEMENTS THE GOVERNMENT IS NOW TRYING TO

18   BRING BEFORE THE COURT ARE ONES THAT THEY HAD AN

19   OPPORTUNITY TO HAVE INCLUDED IN THE PRESENTENCE REPORT

20   AND FAILED TO.

21        THE COURT:  THANK YOU, MR. WATERS.

22        ALL RIGHT, MR. WALCOTT.  THE COURT RECOGNIZES

23   ITS OBLIGATION TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT

24   GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES SET

25   FORTH IN THE STATUTE.

1     I HAVE CONSIDERED ALL ARGUMENTS THAT MR.

2 WATERS HAS MADE ON YOUR BEHALF.  I HAVE CONSIDERED YOUR

3 STATEMENT.  I HAVE CONSIDERED THE POSITION OF THE UNITED

4 STATES.  BUT I HAVE TAKE MR. WATERS' POINT ABOUT THE

5 RELIABILITY OF AT LEAST SOME OF THE STATEMENTS MADE

6 DURING MS. MCCRAY-JONES' PRESENTATION, AND I HAVE NOT

7 CONSIDERED THOSE.  I HAVE CONSIDERED THE ADVISORY

8 GUIDELINE RANGE.

9     AMONG OTHER THINGS, I AM TO CONSIDER THE

10 NATURE AND CIRCUMSTANCES OF THE OFFENSE, AND THE HISTORY

11 AND CHARACTERISTICS OF THE DEFENDANT, THE NEED FOR THE

12 SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE

13 OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE

14 JUST PUNISHMENT, THE NEED FOR THE SENTENCE IMPOSED TO

15 DETER OTHERS WHO MIGHT CHOOSE TO ENGAGE IN THE CRIMINAL

16 BEHAVIOR THAT BRINGS YOU HERE, THE NEED FOR THE SENTENCE

17 IMPOSED TO PROTECT THE PUBLIC FROM FURTHER CRIME BY YOU,

18 THE NEED FOR THE SENTENCE IMPOSED TO PROVIDE YOU WITH

19 NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE,

20 OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE

21 MANNER.

22     THE STATUTE LISTS A NUMBER OF OTHER FACTORS.

23 I HAVE CONSIDERED ALL OF THOSE, ALTHOUGH I WON'T MENTION

24 EACH ONE INDIVIDUALLY.

25     AS FOR THE NATURE AND CIRCUMSTANCES OF THE

OFFENSE, YOU DID POSSESS CHILD PORNOGRAPHY.  THE DETAILS

ARE SET OUT IN THE REPORT.  IT WASN'T SOME KIND OF

ACCIDENTAL POSSESSION.  IT WAS A KNOWN POSSESSION.  MS.

MCCRAY-JONES TOUCHED ON THAT.  THE REPORT DETAILS IT.

THE PORNOGRAPHY INVOLVES CHILDREN.  THE WHOLE

NOTION OF CONSENT, A PREPUBESCENT CHILD CONSENTING IS

PREPOSTEROUS.  IT'S ADULTS RAPING CHILDREN AND

VIDEOTAPING IT AND SENDING IT OUT ON THE INTERNET FOR

PEOPLE TO COLLECT AND LOOK AT AND FIND SOMETHING

WORTHWHILE IN IT.  IT'S DISGRACEFUL BEHAVIOR.

THOSE WHO MANUFACTURE IT -- I AM NOT SAYING

YOU ARE A MANUFACTURER, BUT THOSE WHO COLLECT IT AND

POSSESS IT FUEL THE ABUSE OF CHILDREN, AND IT CAN NEVER

BE TAKEN DOWN FROM THE INTERNET.

IF YOU ARE A CHILD THAT HAS BEEN RAPED AND IT

HAS BEEN VIDEOTAPED AND IT'S ON THE INTERNET, IT'S OUT

THERE FOREVER.  AND YOU KNOW IT.  AND YOU GO THROUGH YOUR

LIFE KNOWING IT.  IT'S HORRIBLE.  IT'S HORRIBLE BEHAVIOR.

SO IT IS A SERIOUS OFFENSE MERITING SERIOUS PUNISHMENT.

YOU KNEW BETTER.  YOU ARE AN EDUCATED MAN.

YOU SERVED IN THE ARMY.  YOU SUSTAINED A MILITARY INJURY.

I HAVE TAKEN THAT INTO ACCOUNT.  I HAVE TAKEN INTO

ACCOUNT YOUR ENTIRE HISTORY AND CHARACTERISTICS, THE GOOD

AND THE BAD.  MR. WATER'S TOUCHED ON THE REALITY THAT YOU

HAD ONE MISDEMEANOR AND IT WAS A SUPERVISED RELEASE

1  PROBATION COMPONENT TO THAT AND THAT IS WHY YOU ARE NOT A

2  I.

3          THE PARTIES AGREED TO A RESOLUTION OF THIS

4  THAT IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY.  I

5  HAVE READ ALL THE LETTERS THAT WERE SUBMITTED, AND YOU

6  STILL HAVE FAMILY SUPPORT.  I SUSPECT THE FAMILY IN SOME

7  WAYS DON'T KNOW THE DETAILS -- AND IT'S A GOOD THING --

8  OF WHAT IS IN THE VIDEOS AND THE IMAGES.

9          THERE IS A NEED TO IMPOSE JUST PUNISHMENT FOR

10  THIS VERY SERIOUS OFFENSE.  I DO THINK A SENTENCE AT THE

11  TOP OF THE ADVISORY GUIDELINE RANGE IS THE SENTENCE THAT

12  IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO

13  INCAPACITATE THE DEFENDANT, TO REFLECT THE SERIOUS NATURE

14  OF THE OFFENSE, AND TO TAKE INTO ACCOUNT HIS HISTORY AND

15  CHARACTERISTICS.

16          HAVING FULLY CONSIDERED THE ENTIRE RECORD IN

17  THIS CASE, PURSUANT TO THE SENTENCING REFORM ACT OF 1984

18  AND IN ACCORDANCE WITH THE SUPREME COURT'S DECISION IN

19  UNITED STATES VERSUS BOOKER, IT'S THE JUDGMENT OF THE

20  COURT THAT THE DEFENDANT, MICHAEL ANTHONY WALCOTT, IS

21  HEREBY COMMITTED TO THE CUSTODY OF THE BUREAU OF PRISONS

22  TO BE IMPRISONED FOR A TERM OF 120 MONTHS.  PURSUANT TO

23  THE PLEA AGREEMENT, COUNTS 1 THROUGH 11 ARE DISMISSED.

24          UPON RELEASE FROM IMPRISONMENT, YOU SHALL BE

25  PLACED ON SUPERVISED RELEASE FOR 10 YEARS.

1        WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF

2   THE BUREAU OF PRISONS, YOU SHALL REPORT IN PERSON TO THE

3   PROBATION OFFICE IN THE DISTRICT TO WHICH YOU ARE

4   RELEASED.

5        WHILE ON SUPERVISED RELEASE, YOU SHALL NOT

6   COMMIT ANOTHER FEDERAL, STATE OR LOCAL CRIME.

7        YOU SHALL NOT POSSESS A FIREARM OR DESTRUCTIVE

8   DEVICE.

9        YOU SHALL NOT ILLEGALLY POSSESS A CONTROLLED

10  SUBSTANCE.

11       YOU SHALL COMPLY WITH THE STANDARD CONDITIONS

12  OF THE DISTRICT AND THE FOLLOWING ADDITIONAL CONDITIONS

13  WHICH THE COURT FINDS APPROPRIATE AFTER FULLY CONSIDERING

14  ALL THE FACTORS UNDER 18 U.S.C. SECTION 3553(A),

15  INCLUDING THE NATURE OF THE OFFENSE, THE DOMESTIC

16  VIOLENCE HISTORY, THE USE OF THE COMPUTER, THE NEED FOR

17  SEX OFFENDER TREATMENT.

18       YOU SHALL SUBMIT TO A PSYCHOSEXUAL EVALUATION

19  BY A MENTAL HEALTH PROFESSIONAL AS DIRECTED BY PROBATION,

20  PARTICIPATE IN A PROGRAM OF MENTAL HEALTH AS DIRECTED BY

21  PROBATION, PARTICIPATE IN A SEX OFFENDER TREATMENT

22  PROGRAM.

23       YOU WILL SUBMIT TO PHYSIOLOGICAL TESTING AS

24  DIRECTED BY PROBATION.

25       YOUR RESIDENCE AND EMPLOYMENT SHALL BE

1　　PRE-APPROVED BY PROBATION.  ANY PROPOSED CHANGE IN

2　　RESIDENCE OR EMPLOYMENT MUST BE PROVIDED TO PROBATION AT

3　　LEAST TEN DAYS BEFORE THE CHANGE AND PRE-APPROVED BEFORE

4　　THE CHANGE.

5　　　　　　YOU SHALL NOT POSSESS ANY MATERIAL DEPICTING

6　　AND/OR DESCRIBING CHILD PORNOGRAPHY OR SIMULATING CHILD

7　　PORNOGRAPHY AS DEFINED IN 18 U.S.C. SECTION 2256.

8　　　　　　YOU SHALL NOT ENTER ANY LOCATION WHERE SUCH

9　　MATERIAL CAN BE ACCESSED, OBTAINED OR VIEWED.

10　　　　　　YOU SHALL COMPLY WITH THE REQUIREMENTS OF THE

11　　SEX OFFENDER REGISTRATION AND NOTIFICATION ACT AS

12　　DIRECTED BY PROBATION.

13　　　　　　YOU SHALL NOT USE, PURCHASE, POSSESS, PROCURE

14　　OR OTHERWISE OBTAIN ANY COMPUTER OR ELECTRONIC DEVICE

15　　THAT CAN BE LINKED TO ANY COMPUTER NETWORK UNLESS

16　　APPROVED BY PROBATION TO ENSURE COMPLIANCE WITH

17　　SUPERVISION.

18　　　　　　YOU WILL SUBMIT TO UNANNOUNCED SEARCHES OF ANY

19　　COMPUTER OR COMPUTER EQUIPMENT, INCLUDING MOBILE PHONES,

20　　AT THE DIRECTION OF PROBATION, WHICH COULD INCLUDE

21　　PROBATION USING COMPUTER MONITORING TECHNOLOGY AT THE

22　　DIRECTION OF PROBATION.

23　　　　　　YOU SHALL CONSENT TO THE INSTALLATION OF

24　　SYSTEMS OR SOFTWARE THAT WILL ALLOW PROBATION TO MONITOR

25　　COMPUTER USE ON ANY COMPUTER THAT YOU OWN OR ARE

1  AUTHORIZED TO USE.  YOU WILL PAY THE COSTS OF THAT

2  MONITORING.

3          YOU SHALL NOT USE, POSSESS OR CONTROL ANY

4  COMPUTER BASED COUNTER FORENSIC TOOLS.  YOU SHALL NOT

5  HAVE ANY SOCIAL NETWORKING ACCOUNTS UNLESS PRE-APPROVED

6  BY PROBATION.

7          YOU SHALL NOT -- EXCUSE ME.

8          YOU SHALL SUBMIT TO A SEARCH OF YOUR PERSON,

9  HOUSE, RESIDENCE, VEHICLES, PAPERS, COMPUTERS OR OTHER

10  ELECTRONIC COMMUNICATION OR DATA DEVICE AT ANY TIME WITH

11  OR WITHOUT A WARRANT.  THE SEARCH MAY BE CONDUCTED BY LAW

12  ENFORCEMENT OR PROBATION WITH REASONABLE SUSPICION

13  CONCERNING VIOLATION OF CONDITIONS OF SUPERVISION IN THE

14  LAWFUL DISCHARGE OF THE PROBATION OFFICER'S DUTY.

15          YOU SHALL COOPERATE IN THE COLLECTION OF DNA.

16          YOU WILL PAY A SPECIAL ASSESSMENT OF $100.  I

17  AM NOT GOING TO IMPOSE A FINE.

18          MR. WALCOTT, YOU CAN APPEAL YOUR CONVICTION IF

19  YOU BELIEVE THAT YOUR GUILTY PLEA WAS SOMEHOW UNLAWFUL OR

20  INVOLUNTARY, OR IF THERE IS SOME OTHER FUNDAMENTAL DEFECT

21  IN THE PROCEEDING THAT WAS NOT WAIVED BY YOUR GUILTY

22  PLEA.

23          YOU ALSO HAVE A STATUTORY RIGHT TO APPEAL YOUR

24  SENTENCE UNDER CERTAIN CIRCUMSTANCES, PARTICULARLY IF YOU

25  THINK YOUR SENTENCE IS CONTRARY TO LAW.

1    HOWEVER, YOU DID ENTER INTO A PLEA AGREEMENT

2    THAT CONTAINS AN APPELLATE WAIVER.  IN LIGHT OF YOUR

3    SENTENCE, I BELIEVE YOU HAVE WAIVED YOUR RIGHT TO APPEAL

4    YOUR SENTENCE.

5    IF YOU BELIEVE THE WAIVER IS UNENFORCEABLE OR

6    INAPPLICABLE FOR ANY REASON, YOU CAN PRESENT THAT THEORY

7    TO THE APPELLATE COURT.

8    WITH FEW EXCEPTIONS, ANY NOTICE OF APPEAL MUST

9    BE FILED WITHIN 14 DAYS OF THE JUDGMENT BEING ENTERED ON

10   THE DOCKET IN YOUR CASE.  IF YOU ARE UNABLE TO PAY THE

11   COSTS OF AN APPEAL, YOU MAY APPLY FOR LEAVE TO APPEAL IN

12   FORMA PAUPERIS.

13   IF YOU SO REQUEST, THE CLERK OF COURT WILL

14   PREPARE AND FILE NOTICE OF APPEAL ON YOUR BEHALF.

15   DID YOU WANT ME TO MAKE A RECOMMENDATION AS TO

16   WHERE HE SERVES?

17   MR. WATERS:  YES, YOUR HONOR.  WE WOULD ASK IF

18   THE COURT COULD RECOMMEND BUTNER, AND ALSO ACCESS TO

19   VOCATIONAL AND EDUCATIONAL OPPORTUNITIES AS AVAILABLE.

20   THE COURT:  I WILL RECOMMEND FCI-BUTNER AND

21   RECOMMEND VOCATIONAL AND EDUCATIONAL OPPORTUNITIES FOR

22   MR. WALCOTT.

23   ANYTHING ELSE FROM THE UNITED STATES?

24   MS. MCCRAY-JONES:  NO, YOUR HONOR.

25   THE COURT:  I THANK COUNSEL FOR THEIR WORK

1   HERE TODAY.  THAT WILL CONCLUDE THE MATTER INVOLVING MR.

2   WALCOTT.  GOOD LUCK TO YOU, SIR.

3           (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED.)

4

5

6

7

8                          CERTIFICATE

9

10          THIS IS TO CERTIFY THAT THE FOREGOING

11  TRANSCRIPT OF PROCEEDINGS TAKEN IN THE UNITED STATES

12  DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF

13  THE SHORTHAND NOTES OF THE PROCEEDINGS TAKEN BY ME IN

14  MACHINE SHORTHAND AND TRANSCRIBED BY COMPUTER UNDER MY

15  SUPERVISION.

16          DATED THIS 6TH DAY OF JANUARY, 2015.

17

18

19                          /S/ SHARON K. KROEGER
                            COURT REPORTER
20

21

22

23

24

25