IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CR-289-D

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>MICHAEL ANTHONY WALCOTT, )<br>)<br>Defendant. ) | **ORDER** |

On May 15, 2020, Michael Anthony Walcott ("Walcott" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 66]. On January 5, 2021, Walcott, through counsel, filed a memorandum and a document in support of his motion for compassionate release [D.E. 69, 70]. On March 10, 2021, the government responded in opposition [D.E.75]. On March 24, 2021, Walcott replied [D.E. 76]. As explained below, the court denies Walcott's motion.

I.

On November 12, 2013, with a written plea agreement, Walcott pleaded guilty to possession of child pornography. See [D.E. 25, 26]. On February 10, 2014, the court held Walcott's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 29, 31, 33]; Sent. Tr. [D.E. 35] 4. The court determined Walcott's total offense level to be 30, his criminal history category to be II, and his advisory guideline range to be 108 to 120 months' imprisonment. See Sent. Tr. [D.E. 35] 5. After thoroughly considering all relevant factors under

18 U.S.C. § 3553(a), the court sentenced Walcott to 120 months' imprisonment. See id. at 15–18. Walcott did not appeal.

On February 9, 2015, Walcott moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. See [D.E. 38]. On October 20, 2015, the government moved to dismiss Walcott's motion. See [D.E. 44]. On October 30, 2015, Walcott responded in opposition to the government's motion. See [D.E. 46]. On May 1, 2016, the court granted the government's motion to dismiss and dismissed Walcott's section 2255 motion and denied a certificate of appealability. See [D.E. 47]. Walcott appealed. See [D.E. 49]. On October 21, 2016, the United States Court of Appeals for the Fourth Circuit denied a certificate of appealability and dismissed Walcott's appeal. See United States v. Walcott, 670 F. App'x 64, 65 (4th Cir. 2016) (per curiam) (unpublished).

On March 5, 2019, Walcott again moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. See [D.E. 62]. On August 15, 2019, the court dismissed Walcott's second section 2255 motion as successive and denied a certificate of appealability. See [D.E. 64]. Walcott did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have

2

served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

---

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021); United States v. Kibble, No. 20-7009, 2021 WL 1216543, at *3–4 (4th Cir. Apr. 1, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 2021 WL 1216543, at *3–4. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 2021 WL 1823289, at *3; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

On October 5, 2020, Walcott requested compassionate release from the warden, which the warden denied on October 15, 2020. See [D.E. 66-1]; [D.E. 69] 3. The government has not invoked section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Walcott's claim on the merits.

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the

5

Walcott seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Walcott cites the COVID-19 pandemic and his medical conditions, including obesity, chronic pain, nerve damage, and migraines. See [D.E. 66] 1; [D.E. 69] 2, 5–6; [D.E. 70]; [D.E. 76] 1–3. Walcott also cites his age (38), his race, the conditions at FCI Fort Dix, his rehabilitation efforts, that he has served over 90 months of his sentence, and his release plan. See [D.E. 66] 1–2, 4–5; [D.E. 69] 1–2, 4–6; [D.E. 76] 2.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Walcott states that he suffers from obesity, chronic pain, nerve damage, and migraines, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Walcott serves his sentence. Accordingly, reducing Walcott's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Walcott's medical conditions, age, race, rehabilitation efforts, that he has served over 90 months of his sentence, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Walcott's sentence. See High, 2021 WL 1823289, at *4–7;

---

requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

6

Kibble, 2021 WL 1216543, at *4–5; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Walcott is 38 years old and engaged in very serious criminal behavior in 2011. PSR [D.E. 29] ¶¶ 6–9. Walcott received and shared numerous child pornography images and videos on a peer-to-peer computer program, including images of a 3 year-old child being raped. See id. Investigators ultimately determined that Walcott received and shared at least 102 videos (7,650 images) of child pornography, many of which depicted minors under the age of 12 and portrayed sadistic conduct or other depictions of violence. See id. ¶ 9. Walcott is a violent recidivist, with a conviction for assault, and has performed poorly on supervision. See id. ¶ 14. Nonetheless, Walcott has taken some positive steps while incarcerated on his federal sentence. See [D.E. 69] 6.

The court has considered Walcott's potential exposure to COVID-19, Walcott's age, his race, his medical conditions, his rehabilitation efforts, that he has served over 90 months of his sentence, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 2021 WL 1823289, at *4–7; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Walcott's arguments, the government's persuasive response, and the need to punish Walcott for his serious criminal behavior, to incapacitate Walcott, to promote respect for the law, to deter others, and to protect society, the court declines to grant Walcott's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 2021 WL 1823289, at *4–7; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

7

II.

In sum, the court DENIES Walcott's motion for compassionate release [D.E. 66, 69].

SO ORDERED. This 13 day of May 2021.

                                                    JAMES C. DEVER III
                                                   United States District Judge